**NO. 16-13617-GG**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**
*Plaintiff/appellee,*

**v.**

**MICHAEL EDWIN HARDING,**
*Defendant/appellant.*

---

**On Appeal from the United States District Court
for the Southern District of Florida**

---

**BRIEF OF THE APPELLANT
MICHAEL EDWIN HARDING**

---

**MICHAEL CARUSO**
**Federal Public Defender**

**Fletcher Peacock**
**Assistant Federal Public Defender**
**Attorney for Michael Edwin Harding**
**109 North 2nd Street**
**Fort Pierce, Florida 34950-4404**
**Telephone No. (772) 489-2123**

**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

---

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### United States v. Michael Edwin Harding
### Case No. 16-13617-GG

Appellant Michael Edwin Harding files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Barnes, Antonia J., Assistant United States Attorney

Caruso, Michael, Federal Public Defender

Ferrer, Wifredo A., United States Attorney

Funk, Daniel E., Assistant United States Attorney

Goodman, Hon. Jonathan, United States Magistrate Judge

Harding, Michael Edwin, Defendant

Killinger, Russell R., Assistant United States Attorney

Lynch, Jr., Hon. Frank J., United States Magistrate Judge

Peacock, Fletcher, Assistant Federal Public Defender

Rosenberg, Hon. Robin L., United States District Judge

Salyer, Kathleen M., Assistant United States Attorney

Simonton, Hon. Andrea M., United States Magistrate Judge

Smachetti, Emily M., Assistant United States Attorney

## STATEMENT REGARDING ORAL ARGUMENT

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . C-1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   Course of Proceedings and Disposition in the District Court. . . . . . . . . . . 3

   Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   Standards of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . . . . . . . . 16

   1.    Whether the lower court erred by not adequately informing Mr.

         Harding of the consequences of his plea.  Specifically, whether

         the court's failure to inform Mr. Harding that he would be subject

         to mandatory registration as a sex offender and possible indefinite

         civil commitment violated the requirement that his plea be a

         knowing and voluntary waiver.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2.    Whether the lower court's imposition of a sentence of life

imprisonment was substantively unreasonable.. . . . . . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

iii

# TABLE OF CITATIONS

## CASES:

*Bauder v. Department of Corrections*,

    619 F.3d 1272 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Gall v. United States,*

    552 U.S. 38, 128 S.Ct. 586 (2007). . . . . . . . . . . . . . . . . . . . . . . . . 21-22, 28

*Kennedy v. Louisiana*,

    554 U.S. 407, 128 S. Ct. 2641 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Kimbrough v. United States*,

    552 U.S. 85, 128 S. Ct. 558 (2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Padilla v. United States*,

    559 U.S. 356, 130 S.Ct. 1473 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Rita v. United States*,

    551 U.S. 338, 127 S.Ct. 2456 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Beiermann*,

    599 F. Supp. 2d 1087 (N.D. Iowa 2009).. . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Booker*,

    543 U.S. 220, 125 S. Ct. 738 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*United States v. Campa*,

    459 F.3d 1174. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Davila*,

    749 F.3d 982 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*United States v. Diaz*,

    720 F. Supp. 2d 1039 (E.D. Wis. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Grober*,

    624 F.3d 592 (3rd Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Hernandez-Fraire*,

    208 F.3d 945 (11th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14, 16

*United States v. Irey*,

    612 F.3d 1160 (11th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 21-22, 29

*United States v. Jones*,

    143 F.3d 1417. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. McBride*,

    511 F.3d 1292 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Moriarty,*

    429 F.3d 1012 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Pugh*,

   515 F.3d 1179 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Siegel*,

   102 F.3d 477 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Stone*,

   575 F.3d 83 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Talley*,

   431 F.3d 784 (11th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATUTORY AND OTHER AUTHORITY:

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 2242(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2250. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2251(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 2252(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

18 U.S.C. § 2252(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

18 U.S.C. § 2252(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

18 U.S.C. § 2252(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

18 U.S.C. § 2422(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14-15, 20, 22, 26-28

18 U.S.C. § 3553(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 3553(a)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 3553(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

18 U.S.C. § 3553(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 4248. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 16913. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

80 Fed. Reg. 36594 (June 25, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Crim. P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15-16

Fed. R. Crim. P. 11(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fla. Stat. § 84.048(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fla. Stat. § 394.910. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fla. Stat. § 827.071. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fla. Stat. § 943.0435. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fla. Stat. § 943.0435(1)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fla. Stat. § 943.0435(1)(h)(1)(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

U.S.S.G. § 2G2.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23-28

U.S.S.G. § 2G2.2(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 2G2.2(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 2G2.2(b)(3)(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S.S.G. § 2G2.2(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 2G2.2(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 2G2.2(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 2G2.2(b)(7)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 3E1.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 3E1.1(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. § 4B1.5(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S.S.G. Chapter 5, Part. A, (comment n. 2). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. Sentencing Commission, Report to Congress:

     Federal Child Pornography Offenses xii-xiii (2012). . . . . . . . . . . . . . . 24-25

U.S. Sentencing Guidelines Manual,

     Ch. 1, Pt. A, intra. comment  (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Amber Leigh Bagley, *"An Era Of Human Zoning": Banishing Sex*

*Offenders From Communities Through Residence And Work Restrictions*,

57 Emory L.J. 1347 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States.  The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The appeal was timely filed on June 14, 2016 (DE117), from the final judgment and commitment order entered on May 31, 2016 (DE114), that disposes of all claims between the parties to this cause.

## STATEMENT OF THE ISSUES

### ISSUE 1

Whether the lower court erred by not adequately informing Mr. Harding of the consequences of his plea.  Specifically, whether the court's failure to inform Mr. Harding that he would be subject to mandatory registration as a sex offender and possible indefinite civil commitment violated the requirement that his plea be a knowing and voluntary waiver.

### ISSUE 2

Whether the lower court's imposition of a sentence of life imprisonment was substantively unreasonable.

2

## STATEMENT OF THE CASE

The appellant was the defendant in the district court and will be referred to by name or as the defendant.  The appellee, United States of America, will be referred to as the government.  The record will be noted by reference to the document number, and page number of the Record on Appeal.

The defendant, Mr. Harding, is incarcerated.

### Course of Proceedings and Disposition in the District Court

On October 1, 2015, Mr. Harding was charged in a six count **indictment** with: **Counts 1, 2 and 3**, distribution of one or more visual depictions of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(2) and (b)(1);  **Counts 4, 5 and 6**, possession of one or more visual depictions of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  D.E. 12.  On October 15, 2015, the government obtained a seven count **superceding indictment** charging: **Counts 1, 2 and 3**, distribution of one or more visual depictions of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(2) and (b)(1); **Counts 4, 5 and 6**, possession of one or more visual depictions of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(4)(B) and (b)(2); and **Count 7**, enticement of a minor to engage in sexually explicit conduct, 18 U.S.C. § 2422(b).  D.E. 16.  Finally, a **second superceding indictment** was returned charging: **Counts 1, 2 and 3**, distribution of

3

one or more visual depictions of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(2) and (b)(1); **Count 4**, possession of one or more visual depictions of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(4)(B) and (b)(2); **Count 5**, enticing a minor to engage in sexually explicit conduct, 18 U.S.C. § 2242(b); and **Count 6**, enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, 18 U.S.C. § 2251(a) and 2251(e). D.E. 32. All three indictments also charged a forfeiture count.

Mr. Harding pled guilty to Counts 1, 2, 3 and 4. D.E. 76. He pled *nolo contendere* to Counts 5 and 6. *Id*.

On May 23, 2016, the district court sentenced Mr. Harding to 240 months on each of Counts 1, 2, 3 and 4; life imprisonment on Count 5; and 360 months on Count 6, all to run concurrent. The court also imposed a term of life supervised release. D.E. 114. By way of a later stipulated order, the district court ordered Mr. Harding to pay $1,500.00 in restitution. D.E. 151.

On June 14, 2016, Mr. Harding filed a timely notice of appeal. D.E. 117.

### Statement of Facts

On June 23, 2015, a Homeland Security Investigations (HSI) agent in Wilmington, Delaware signed in to a "KIK Messenger" chat room named "#toddlerfuck." Presentence Investigation Report (PSR) at 4. KIK is an internet

service that is used to share messages and other media among registered users.  A chat room is a specific address within the KIK application to which users sign in with a "user name."  Signed in users can send written messages, or "chats," with attachments back and forth.  Chats are visible to all those in the chat room, although the parties can switch to a private area upon use of a password.

Upon signing in the agent observed two images posted by the user name "desthfromabovee."  *Id*.  The images appeared to be child pornography.  The agent downloaded both of the images.  *Id*.

A subpoena was served on KIK Messenger demanding the subscriber information for the user "desthfromabovee."  It was revealed that "desthfromabovee" was registered to "Mark Powers," with an AT&T internet protocol (IP) address in Port Saint Lucie, Florida.  *Id*.  A second subpoena was served on AT&T for the subscriber information for the suspect IP address.  The response revealed that the IP address was registered to Michael Harding, 343 Granduer Ave., Port Saint Lucie, Florida.  *Id*.

On August 13th and 17th, the Delaware HSI agent was able to download two additional child pornography videos posted by "desthfromabovee" in the "#toddlerfuck" chat room.  PSR at 5.

Given this information, Florida HSI agents applied and received a warrant to search Mr. Harding's residence at 343 Garnduer Ave. Port Saint Lucie, Florida. *Id*. During the search, agents located a "PNY" thumb drive, found to contain 606 still images and 102 videos of minors engaged in sexually explicit conduct. *Id*. A second thumb drive appeared to contain 23 similar deleted images.

An LG 800 cellular phone was found to contain additional child pornography videos, including those posted in the "#toddlerfuck" chat room on June 26th and August 4th. *Id*. The phone also contained evidence of chats between "desthfromabovee" and another KIK user about mutual interest in sex with minors. In those chats, the participants discussed their respective sexual experiences with minors. Both participants discussed sexual acts committed with their minor children. PSR, at 6.

During the investigation, Mr. Harding's two step-daughters, C.W., age 9, and H.W., age 7, were questioned and both claimed to have been sexually assaulted by Mr. Harding. C.W. stated to an investigator that, on multiple occasions, Mr. Harding had directed her to to engage in various sex acts while alone with him. PSR at 7-8. During a forensic search of Mr. Harding's cellular phone, agents located one "thumbnail" image, purportedly of C.W. performing oral sex on Mr. Harding. *Id*., D.E. 130 at 83. H.W. reported that when she was four years old Mr. Harding

molested her on three occasions. PSR, at 8. Despite investigators' efforts to verify H.W.'s claims, they were unsubstantiated. *Id*., D.E. 129 at 40 - 46.

Mr. Harding pled guilty to Counts 1 - 4 and *nolo contendere* to Counts 5 and 6. D.E. 76. There was no plea agreement between the parties. *Id*.

During the plea colloquy, the lower court partially addressed the matters listed under Fed. R. Crim. P. 11(b)(1). D.E. 128. However, the court never expressly informed Mr. Harding that a legal consequence of his plea would be mandatory registration and regulation as a sex offender and potential indefinite civil commitment under "Jimmy Ryce" laws. The government made a vague reference that "[the defendant] understands conviction for this offense will result in substantial restrictions where he may live, work and associate." D.E. 128 at 25. The court then asked: "Do you understand that, Mr. Harding?" To which Mr. Harding replied, "Yes." He further stated that he had no "questions about that" and that he did not need additional time to discuss it with his lawyer. D.E. 128 at 25-26.

A Presentence Investigation Report was prepared by the probation office. The probation office computed Mr. Harding's total offense level as follows:

Base Offense Level, U.S.S.G. § 2G2.2(a)(2)                22

Prepubescent minor, U.S.S.G. § 2G2.2(b)(2)              +2

Distribution, U.S.S.G. § 2G2.2(b)(3)(F)                      +2

Sado-masochistic content, U.S.S.G. § 2G2.2(b)(4)          +4

Pattern involving sexual abuse, U.S.S.G. § 2G2.2(b)(5)          +5

Use of a computer, U.S.S.G. § 2G2.2(b)(6)          +2

More than 600 images, U.S.S.G. § 2G2.2(b)(7)(D)          +5

Pattern of activity involving prohibited sexual conduct,

    U.S.S.G. § 4B1.5(b)(1)          +5
          47

Acceptance of responsibility U.S.S.G. § 3E1.1(a) and (b)          -3
          44

PSR at 10.

Pursuant to U.S.S.G. Chapter 5, Part A (comment n. 2), in the event that an offense

exceeds level 43 it shall be treated as a level 43.

    Mr. Harding had no criminal history, so his criminal history category was

Category 1.  U.S.S.G. Sentencing Table, Chapter 5, Part A.

    His resultant sentencing guideline range was "life."

    Prior to sentencing, Mr. Harding filed a motion for downward variance.  D.E.

92. The grounds supporting a downward variance were 1) the excessive and arbitrary

nature of the Specific Offense Characteristics in U.S.S.G. § 2G2.2 and 4B1.5(b)(1);

and 2) the personal mitigating characteristics of Mr. Harding.

Mr. Harding was born in 1987.  Months before his birth, his father was robbed and murdered in New York.  Mr. Harding was then raised by his young mother, Julie, as a single parent.  He has no siblings.  PSR at 12.  Julie Harding worked whatever jobs were available, including as a cocktail waitress in adult clubs, waitress, bartender, etc.  D.E. 130, at 107 - 108.  Beginning when he was an infant, she would often leave him with other people for days at a time.  When he reached his teen years, she would leave him to fend for himself.  For Mr. Harding's entire childhood Julie Harding was addicted to drugs and alcohol.  D.E. 130 at 109.

When Mr. Harding was seven years old he was sexually abused on multiple occasions by a friend's older brother.  PSR at 14.  Yet again, at the age of nine he was sexually molested on multiple occasions by the mother of a friend.  *Id*.  Mr. Harding never reported these incidents until he sought mental health counseling at the age of 20.  *Id*.  At that time Mr. Harding was diagnosed with depression and anxiety.  He was prescribed trazadone, klonopin, Zoloft and Wellbutrin.  *Id*.

Despite these circumstances, Michael Harding obtained his GED and enrolled in college at Indian River State College in Ft. Pierce, Florida.  PSR at 15.  In 2008, he received his Associate's Degree in criminal justice and his certification as a police officer.  *Id*.

9

Upon graduation, Mr. Harding was hired as a police officer for the Fort Pierce Police Department.    During his tenure there he was awarded numerous commendations and was named Police officer of the year in 2011.  PSR at 15.  In 2012, Mr. Harding moved to the Port Saint Lucie Police Department.  He remained there until his arrest in this case in 2015.  *Id*.

At the request of his counsel, Mr. Harding was psychologically evaluated by Dr. Michael Brannon, Psy.D.  Dr. Brannon issued a report, which was filed with the court, and testified at the sentencing.  D.E. 130 at 7-43.  After reviewing the case, interviewing the defendant and his mother, and administering a battery of psychological tests, Dr. Brannon diagnosed Mr. Harding as suffering from: 1) persistent depressive disorder; 2) unspecified anxiety disorder; 3) possible post-traumatic stress disorder; 4) possible panic disorder; and 6) alcohol and marijuana abuse. D.E. 90, at 5.  Mr. Harding showed no indication of malingering.  Importantly, he concluded that Mr. Harding's childhood sexual abuse, "was likely a contributing factor in his actions at the time of the alleged offenses."  D.E. 89 at 5.  He further concluded that, "the examinee's apparent addictions to marijuana, alcohol, and pornography likely impaired his judgment and ability to control his impulses at the time of the alleged offenses."  *Id*.

At sentencing, the government, in pertinent part, first presented police officer Sheila LaGrega. D.E. 129 at 11-46. She testified that she was an investigator of "person's crimes," which she defined as "anything to do with people, homicide, suicide, death investigation, sexual batteries, robberies." *Id*. at 12. Officer LaGrega testified regarding her interviews of Mr. Harding's wife and step-daughters and her investigation of the physical evidence.

The government also presented HSI Special Agent Brian Rey. D.E. 129 at 50-67:D.E. 130 35-54. Agent Rey conducted the forensic examination of Mr. Harding's phone and thumb drives. He testified regarding the content of those devices and to the KIK chats allegedly between Mr. Harding and another KIK user.

Finally, the government presented Ashley Harding, Mr. Harding's wife. D.E. 55-97. Ms. Harding testified to her conversations with her daughters after Mr. Harding was arrested, as well as to her recollection of events surrounding the alleged crimes.

After the testimony of Dr. Brannon, the defense presented Julie Harding, Mr. Harding's mother. D.E. 130 at 106-114. She described Mr. Harding's extremely difficult childhood and her own struggles with poverty and drug addiction during that time. She also testified about the family's pride at Mr. Harding's success, in spite of his difficulties, and to the tragic toll that the case had taken on the family.

11

The defense next presented Elizabeth Perry, Mr. Harding's great aunt.  D.E. 130 at 113-120.  She, too, described the difficult circumstances and neglect that Mr. Harding suffered as a child.  She described Mr. Harding as never cruel, and as intelligent, respectful, loving and kind.  D.E. 130 at 119.

Finally, the defense offered several letters from members of the community and Mr. Harding's family attesting to his good character, difficult childhood, and significant contributions to the community.  D.E. 88.

The entirety of the defense sentencing presentation involved evidence of Mr. Harding's mitigating personal history and characteristics.

At the conclusion of the evidence, the court passed sentence.  D.E. 130 at 140-179.  The court first discussed the requirements of 18 U.S.C. § 3553(a).  D.E. 130 at 140-142.  The court next "summarized" the evidence it heard.  D.E. 130 at 142-153.  Then, it stated the legal considerations upon which it was basing its sentence.  D.E. 130 at 153-164.  Specifically, the lower court based its sentence on the nature and circumstances of the offense (D.E. 130 at 155-156), the sentencing guideline range (D.E. 130, at 156-158), the need for deterrence and to protect the public (D.E. 130 at 159-164), and the need to avoid unwarranted disparity (D.E. 130 at 164).

The sentencing court mentioned, but never weighed, the personal history or characteristics of Mr. Harding in arriving at the sentence.  D.E. 130 at 155.

12

The court sentenced Mr. Harding to 240 months imprisonment on Counts 1-4, life imprisonment on Count 5, and 360 months imprisonment on Count 6, all to run concurrently. That term was followed by lifetime supervised release. D.E. 130 at 164-165.

Counsel for Mr. Harding noted an objection to the substantive reasonableness of the sentence. D.E. 130 at 169. There was no timely objection to the lower court's failure to properly advise Mr. Harding of the consequences of his plea.

## Standards of Review

In the instant case there was no contemporaneous objection to the lower court's failure to advise the defendant of the mandatory sex offender registration, constraints and potential indefinite confinement. If such an issue is not raised before the district court, this Court reviews the claim for plain error. *United States v. Moriarty,* 429 F.3d 1012 (11th Cir. 2005). Plain error is error that is clear and affects substantial rights. A district court's failure to address a core concern of Rule 11 constitutes plain error and results in reversal of the conviction if the error affected the substantial rights of the defendant. *United States v. Davila*, 749 F.3d 982, 992 (11th Cir. 2014). *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). The defendant bears the burden of proving that the sentencing court erred in failing to

properly advise him of the consequences of his plea. *Id*. The government bears the burden of showing lack of prejudice. *Davila*, 749 F.3d at 992.

Whether a particular sentence is reasonable is synonymous with asking "whether the trial court abused its discretion." *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007). The appellate court is obligated to remand for resentencing if it is "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quoting *United States v. McBride*, 511 F.3d 1292, 1297-98 (11th Cir. 2007)). The defendant bears the burden of showing that a sentence is unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

14

## SUMMARY OF THE ARGUMENT

The district court's failure to advise Mr. Harding of the sex offender and potential civil commitment consequences of his plea of guilty was a denial of due process and must result in automatic reversal of his conviction and the opportunity to withdraw his plea. Sex offender registration, restrictions, and the potential of indefinite civil commitment are intimately involved in the criminal process and are critical to an adequate understanding of the consequences of a plea to such charges. Fed. R. Crim. P. 11 requires that the district court inform a pleading defendant of such consequences.

The lower court also imposed a substantively unreasonable sentence. The sentencing guideline range in this case is based on enhancements which are outdated and arbitrary. The court gave too much weight to the guideline range and not enough to other factors, such as the defendant's age, family ties, lack of serious criminal history, and the need to avoid disparity with other child pornography sentences. By giving undue weight to the skewed guideline range the court violated the intent of 18 U.S.C. § 3553(a) and its requirement of individualized sentencing. The case must be remanded for resentencing.

15

## ARGUMENT AND CITATIONS OF AUTHORITY

I.  **The lower court erred by not adequately informing Mr. Harding of the consequences of his plea. Specifically, whether the court's failure to inform Mr. Harding that he would be subject to mandatory registration as a sex offender and possible indefinite civil commitment violated the requirement that his plea be a knowing and voluntary waiver.**

"Rule 11 imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). To constitute a valid guilty plea, the court "must address three core concerns underlying Rule 11: '(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) *the defendant must know and understand the consequences of his guilty plea.*'" *Id*. at 949 (quoting *United States v. Jones*, 143 F.3d 1417) (emphasis added). *Id*.

This Circuit places a greater emphasis than other circuits on the three "core principles" addressed by Rule 11. *Jones*, 143 F.3d at 1419. If this Court cannot be sure that a defendant was made aware of the consequences of his plea, he must be permitted to withdraw his plea. *Id*. "'A court's failure to address any one of these three core concerns requires automatic reversal.'" *Hernandez-Fraire*, 208 F.3d at 949 (quoting *United States v. Siegel*, 102 F.3d 477 (11th Cir. 1996)).

16

In the instant case, the district court engaged in little or no colloquy about whether "he understands conviction for this offense will result in substantial restrictions where he may live, work and associate." D.E. 128 at 25. In fact, it was the government, not the court, that raised the issue. Then court simply asked Mr. Harding whether he understood the government's comment, whether he had questions about it, and whether he wished to consult further with counsel. There was no discussion of the nature or degree of these restrictions. There was certainly no reference to mandatory sex offender registration, any of the specific requirements or penalties of either federal or Florida sex offender registration laws, or the possibility of indefinite civil confinement as a result of the conviction.

Title 42 U.S.C. § 16913 requires that: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence." Anyone who knowingly fails to register, or update their registration, is subject to imprisonment for up to ten years, a $250,000 fine, and supervised release. 18 U.S.C. § 2250.

Additionally, each state is required under 42 U.S.C. § 16913 to enact a criminal statute punishing violators of the sex offender registration requirement with a term

17

of imprisonment "greater than one year." In Florida, where Mr. Harding resides and the offense was charged, Fla. Stat. § 943.0435 makes it a criminal offense to fail to register as a sex offender. That provision provides that any violation is at least a third degree felony. In Florida, Mr. Harding's convictions for distribution of child pornography, possession of child pornography, enticement of a minor, and production of child pornography all require registration as a sex offender. *See* Fla. Stat. §§ 943.0435(1)(b) and (1)(h)(1)(c), 827.071.

Within the state of Florida, and other states throughout the nation, city and county ordinances place further criminal residence and other critical restrictions on sex offenders. *See* Amber Leigh Bagley, *"An Era Of Human Zoning": Banishing Sex Offenders From Communities Through Residence And Work Restrictions*, 57 Emory L.J. 1347 (2008).

But the most severe potential consequence of conviction for the offenses charged against Mr. Harding is indefinite detention under 18 U.S.C. § 4248 or its Florida counterpart, Fla. Stat. § 394.910, *et seq*. These statutes, commonly referred to as "Jimmy Ryce" statutes, provide that the Attorney General or State Attorney may seek to have a defendant declared a "sexually dangerous person" (federal) or a "sexually violent predator" (Florida) and thereby subject to indefinite civil commitment.

This Court has held that an attorney's failure to advise a defendant that pleading guilty could subject him to indefinite civil commitment is a violation of the defendant's Sixth Amendment rights and requires reversal of a conviction and leave to withdraw a guilty plea. In *Bauder v. Department of Corrections*, 619 F.3d 1272 (11th Cir. 2010), the defendant Bauder pled guilty to aggravated stalking of a minor in violation of Fla. Stat. § 84.048(5). During the plea colloquy there was no mention of the possibility of civil confinement. In a habeas corpus proceeding, Bauder claimed that his counsel's failure to advise him properly regarding potential civil detention constituted ineffective assistance of counsel. This Court agreed. Relying on *Padilla v. United States*, 559 U.S. 356, 130 S.Ct. 1473 (2010), the *Bauder* Court found that, at a minimum, a defendant must be advised that "'pending criminal charges may carry a risk of adverse [collateral] consequences.'" *Bauder*, 619 F.3d at 1275 (quoting *Padilla*, 130 S.Ct. at 1483).

In *Padilla*, the Supreme Court held that defense counsel was ineffective in advising her client that his conviction would not make him subject to deportation, when, in fact, it did. The Court recognized that deportation was a civil collateral matter. However, because it was "intimately related to the criminal process" the Court found it "most difficult to divorce the penalty from the conviction..." *Id*. at 1481. In the context of the Sixth Amendment's right to effective assistance of

19

counsel, the Court found no bright-line distinction between direct and collateral consequences. *Id*. The consequence of deportation, even if collateral, was still "critical" to the defendant's knowing decision to enter a plea. *Id*. at 1486.

The same principles apply in Mr. Harding's case. It is simply impossible to glean from the plea colloquy that the government's short and vague comments to the court sufficed as a sufficient warning of these important consequences of the plea. By pleading guilty he became eligible for a host of sex offender requirements, restrictions and penalties, the most serious being indefinite confinement. These are not speculative or minor. They are real and they are "intimately involved" with the criminal penalty and the decision to plead guilty. Just as in *Bauder* and *Padilla*, it was critical that Mr. Harding be fully informed of these consequences of his plea. It is irrelevant that it was the district court, rather than defense counsel, that caused the omission. Both have a duty to properly inform the defendant of the critical consequences of his plea. The court's failure to do so requires that Mr. Harding's conviction be reversed and that he be given the opportunity to withdraw his plea.

## II.    Whether the lower court's imposition of a sentence of life imprisonment was substantively unreasonable.

The district court abused its discretion by imposing an unreasonable sentence and improperly weighing the 18 U.S.C. § 3553(a) factors. " A district court abuses

its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010). In this case, the sentencing court gave too much weight to the outdated arbitrary sentencing guideline range and too little to Mr. Harding's personal history and characteristics and the goal of imposing an individualized sentence.

Mr. Harding was sentenced to life imprisonment, to be followed by lifetime supervised release. The sentence was within the sentencing guideline range. The district court mentioned Mr. Harding's history and personal characteristics in its summary of the evidence, but it did not discuss those factors, or any mitigation at all, in arriving at a sentence. In doing so, the sentencing court, failed "to afford consideration to relevant factors that were due significant weight." *Irey*, 612 F.3d at 1189.

Federal sentencing guidelines are advisory and not binding on the sentencing court. *United States v. Booker*, 543 U.S. 220, 245, 125 S. Ct. 738, 756 (2005). Although the guidelines are "the starting point and the initial benchmark" for determining a sentence, the court "may not presume that the Guidelines range is reasonable." *Gall v. United States,* 552 U.S. 38, 49-50, 128 S.Ct. 586, 596-97; *see*

also *Irey*, 612 F.3d at 1185 (stating that the abuse of discretion standard applies "whether the sentence is within or without the guidelines range"). Each sentence must be based on "an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50, 128 S. Ct. at 596. While district courts should "give respectful consideration to the Guidelines," they are permitted "to tailor the sentence in light of other statutory concerns as well." *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S. Ct. 558, 570 (2007) (quoting *Booker*, 543 U.S. at 245-46). "[T]he Guidelines are not the only consideration . . . [and] the district judge should consider all of the § 3553(a) factors" to determine an appropriate sentence. *Gall*, 552 U.S. at 49-50, 125 S.Ct. at 596.

The § 3553(a) factors that sentencing courts must consider are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the applicable guideline sentencing range;
(5) pertinent policy statements issued by the Sentencing Commission;

22

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The district court's sentence of life imprisonment was unreasonable and constitutes an abuse of its sentencing discretion because the court presumed the guidelines to be reasonable. The district court based its sentence on the advisory guideline range, without evaluating whether the guidelines served their stated purpose or the factors enumerated in § 3553(a). This is evident when looking to the charged conduct and Mr. Harding's history and characteristics. He was convicted of a serious offense, but had numerous mitigating personal characteristics. In light of these legal and factual considerations, a life imprisonment sentence was simply unreasonable.

The U.S.S.G. § 2G2.2 child pornography sentencing guidelines fail to serve the purposes of a criminal sentence as defined by the 18 U.S.C. § 3553(a) factors.

Congress enacted federal sentencing guidelines with three primary objectives: honesty, meaning that the sentence given at sentencing reflected the time to be served; uniformity, meaning that similar crimes by similar offenders received similar sentences; and proportionality, meaning that sentences should vary appropriately based on the offender's level of culpability. U.S. Sentencing Guidelines Manual, ch. 1, pt. A, introductory cmt. (2015).

23

The Sentencing Commission, along with an ever increasing number of federal courts, has concluded that the § 2G2.2 guidelines for child pornography offenses are inadequate to serve the goals of uniformity and proportionality. U.S. SENTENCING COMMISSION, REPORT TO CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES xii-xiii (2012) (finding that many stakeholders in the criminal justice system have concluded that current guidelines "fail[] to adequately differentiate among offenders based on their culpability," leading to "growing sentencing disparities among similarly situated offenders.") (Commission Report); *see also* 80 Fed. Reg. 36594 (June 25, 2015) (stating that one of the Sentencing Commission's top policy priorities for 2015-16 is enacting the reforms to child pornography sentencing explored in the 2012 commission report).

The Commission Report noted how current child pornography guidelines fail to promote proportionality. Current guidelines provide for enhancements based on factors existing in the vast majority of cases, *i.e.*, for conduct involving:   a) sadomasochistic content, b) prepubescent victims, c) use of a computer, and d) for possessing a large number of images. Commission Report, at 209 (stating that such enhancements apply in over 90 percent of cases in which an offender is convicted of a non-production offense); *see also United States v. Grober*, 624 F.3d 592, 608 (3d Cir. 2010); *United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010). The

24

report found that such enhancements often fail to distinguish between offenders based on their level of culpability. Commission Report xvii; *see, e.g.*, *United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009) (opining that § 2G2.2 is "in our judgment harsher than necessary" for many offenders); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009) ("This guideline . . . blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment.").

The failure of the guidelines to calibrate sentences based on the individual relative culpability has led a growing consensus of courts to give below-guideline sentences in child pornography cases. Commission Report xii-xiii (stating that in 2010, 78.8 percent of defendants received below-guideline sentences in such cases, including 44.3 percent of defendants receiving below-guideline sentences not endorsed by the government). Because of this, most offenders are subject to long guideline ranges and arbitrary decisions about whether those ranges should be adopted. Commission Report xii-xiii (2012) (concluding that "no offender or offense characteristics . . . appeared to account for [below - guideline sentencing] practices in most cases," but rather the differences were primarily attributable to "geographical differences").

These arbitrary and excessive sentencing guideline ranges have resulted in another effect that violates the intent of § 3553(a). That is a lack of uniformity in child pornography sentences. Because a significant number of courts no longer accept the enhancement structure of § 2G2.2 and regularly vary downward from the guideline range, the issue has created a distinct sentencing range disparity between those sentenced by courts who follow the enhancement structure and those who do not. Thus, the guidelines no longer serve the purpose of creating a "heartland" of typical child pornography cases that warrant guideline sentences. They do just the opposite. The disparity and lack of uniformity are directly contrary to Congress' intent in § 3553(a), the mandatory cornerstone of federal sentencing.

In light of this failure to achieve two of the three primary goals of the sentencing guidelines, the § 2G2.2 enhancement scheme violates many of the § 3553(a) factors that sentencing courts are required to consider. When sentences are arbitrary, it lessens respect for the law as a means for providing just punishment. See 18 U.S.C. § 3553(a)(2)(A). As explored above, § 2G2.2 has failed to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Such disparities also erode the deterrent effect of escalating sentences for more serious offenses. 18 U.S.C. § 3553(a)(2)(B); *Kennedy v. Louisiana*, 554 U.S. 407, 445-46, 128 S. Ct. 2641, 2664

26

(2008) (explaining that imposing the same sentence for more and less culpable conduct may prevent deterrence of the more culpable conduct). Finally, and most clearly, the guidelines are out of step with the "pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

These distortions of § 3553(a) are clearly evident in Mr. Harding's case. He received 15 additional offense levels due to "run of the mill" enhancements in § 2G2.2, two for prepubescent victim, two for distribution, four for sadomasochistic content, two for use of a computer, and five for more than six hundred images.[1] Those enhancements, which are common and in no way unique to Mr. Harding, dramatically enhanced the guideline range, from a base offense level of 22, to level 37. In no way can his sentencing range said to be individualized to either his conduct or his characteristics.

Moreover, by providing such an arbitrary and artificially high sentencing range, the § 2G2.2 enhancements overwhelm the other equally important and mandatory considerations of § 3553(a). In particular in the instant case, the sentencing court gave excessive consideration to the arbitrary guideline range and insufficient weight

---

[1]It should also be noted that Mr. Harding received a ten offense level increase for a "pattern" of behavior, that being the alleged abuse of his step-daughter. Thus, this factor was also arguably overrepresented in the guideline computation. PSR, at 10.

27

to other considerations, such as Mr. Harding's age, family ties, lack of serious criminal history, contributing mental illness and substance abuse, contributions to the community, and cooperation with authorities.

The heartland of child pornography sentences has shifted. The Sentencing Commission has reported that the specific offense characteristics, once thought relevant to individualized culpability, are no longer significant considering the changed nature of the offense. Because courts, and even prosecutors, have recognized the overseverity and disproportionate nature of these sentences, the guideline range no longer reflects a typical child pornography. Assigning an offender, such as Mr. Harding, a guideline sentence does not serve to promote proportionality or uniformity in sentencing. And it does not provide the individualized sentence required by *Gall*.

The district court started from the presumption that a within-guidelines sentence would be reasonable, and found "no mitigating factors that the Court can find that justify a variance downward given the egregiousness and pattern in this case." D.E. 43, at 26. However, the § 2G2.2 guidelines for child pornography do not warrant such deference because they do not promote the underlying required goals of § 3553(a). Thus, the district court abused its discretion by giving too much weight to the guideline recommendation and "fail[ing] to afford consideration to [other]

relevant factors that were due significant weight." *Irey*, 612 F.3d at 1189 (quoting

*United States v. Campa*, 459 F.3d at 1174).

## CONCLUSION

For the foregoing reasons, this Court must reverse Mr. Harding's conviction

and remand with instructions that he be permitted to withdraw his guilty plea, or in

the alternative, that his sentence be vacated and the case remanded to the district court

for resentencing.

MICHAEL CARUSO
Federal Public Defender

*s/Fletcher Peacock*
Fletcher Peacock
Assistant Federal Public Defender
109 North 2nd Street
Fort Pierce, Florida 34950-4404
Telephone No. (772) 489-2123

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7).  According to the WordPerfect program on which it is written, the

numbered pages of this brief contain 6,008 words.

*s/Fletcher Peacock*
Fletcher Peacock

## CERTIFICATE OF SERVICE

I HEREBY certify that on this  28th  day of November, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent seven copies to the Clerk of the Court via third party commercial carrier for delivery within three days.  I also certify that the foregoing document is being served this day via CM/ECF on Emily M. Smachetti, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*s/Fletcher Peacock*
Fletcher Peacock

30