IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **16-13617-GG**

United States of America,

Appellee,

- versus -

Michael Edwin Harding,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

<u>BRIEF FOR THE UNITED STATES</u>

Wifredo A. Ferrer
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9129

Emily M. Smachetti
Chief, Appellate Division

Phillip DiRosa
Assistant United States Attorney

Lisette M. Reid
Assistant United States Attorney
Of Counsel

## United States v. Harding, Case No. 16-13617-GG

## Certificate of Interested Persons

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities previously included in the CIP included in the appellant's initial brief, and also includes additional persons and entities (designated in bold face) who have an interest in the outcome of this case and were omitted from the appellant's CIP.

Barnes, Antonia J.

Caruso, Michael

**DiRosa, Philip**

Ferrer, Wifredo A.

Funk, Daniel E.

Goodman, Hon. Jonathan

Harding, Michael Edwin

Killinger, Russell R.

Lynch Jr., Hon. Frank J.

Peacock, Fletcher

**Reid, Lisette M.**

Rosenberg, Hon. Robin L.

## Certificate of Interested Persons (Continued)

Salyer, Kathleen M.

Simonton, Hon. Andrea M.

Smachetti Emily M.

s/ Lisette M. Reid
Lisette M. Reid
Assistant United States Attorney

C-2 of 2

## Statement Regarding Oral Argument

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page:**

Certificate of Interested Persons  ....................................................... c-1

Statement Regarding Oral Argument  .................................................. i

Table of Contents  .............................................................................. ii

Table of Citations  .............................................................................iv

Statement of Jurisdiction  ...............................................................viii

Statement of the Issues...................................................................... 1

Statement of the Case:

      1.    Course of Proceedings and Disposition in the Court Below  ............ 1

      2.    Statement of the Facts  ..................................................... 2

            The Pre-Sentence Investigation Report........................... 11

            The Sentencing Hearing ................................................. 15

      3.    Standards of Review  ...................................................... 27

Summary of the Argument  ............................................................... 28

Argument

I.    The District Court Did Not Plainly Err During the Fed. R. Crim. P. 11

    Colloquy. ..................................................................................... 29

## Table of Contents

### (continued)

**Page:**

II.  Harding's Life Sentence Was Not Substantively Unreasonable. .................. 37

Conclusion .............................................................................................. 46

Certificate of Compliance ....................................................................... 47

Certificate of Service ............................................................................. 48

## Table of Citations

<u>Cases:</u>                                                                 <u>Page:</u>

*Bauder v. Dept. of Corr. State of Fla.*,

  619 F.3d 1272 (11th Cir. 2010)............................................................... 32, 33, 34

*Holmes v. United States,*

  876 F.2d 1545 (11th Cir. 1989)............................................................31

*Marek v. Singletary*,

  62 F.3d 1295 (11th Cir. 1995) ...............................................................44

*Padilla v. Kentucky*,

  559 U.S. 356 (2010) ........................................................................ 32, 33

*Turner Broadcasting Sys., Inc. v. FCC,*

  520 U.S. 180, 223-24 (1997) ................................................................44

*United States v. Clay*,

  483 F.3d 739 (11th Cir. 2007)................................................................38

*United States v. Dominguez Benitez,*

  542 U.S. 74 (2004) .................................................................... 27, 31, 37

*United States v. Foster*,

  209 F. App'x 942 (11th Cir. 2006) .......................................................44

*United States v. Hernandez,*

  896 F.2d 513 (11th Cir. 1990)................................................................27

## Table of Citations (Continued)

**Cases:**                                                                    **Page:**

*United States v. Hernandez-Fraire*,

    208 F.3d 945 (11th Cir. 2000)................................................................31

*United States v. Huskey*,

    349 F. App'x 495 (11th Cir 2009) ........................................................44

*United States v. Irey*,

    612 F.3d 1160 (11th Cir. 2010)................................................... 39, 42

*United States v. Johnson*,

    451 F.3d 1239 (11th Cir. 2006)............................................................43

*United States v. Kapordelis*,

    569 F.3d 1291 (11th Cir. 2009)............................................................44

*United States v. Kuhlman*,

    711 F.3d 1321 (11th Cir. 2013)................................................... 27, 30

*United States v. Livesay*,

    525 F.3d 1081 (11th Cir. 2008)............................................................37

*United States v. Olano*,

    507 U.S. 725 (1993) ............................................................................27

*United States v. Pielago,*

    135 F.3d 703 (11th Cir. 1998)............................................................27

## Table of Citations (Continued)

**Cases:**                                                                                               **Page:**

*United States v. Pugh*,

   515 F.3d 1179 (11th Cir. 2008)...........................................................................39

*United States v. Sarras*,

   575 F.3d 1191) (11th Cir. 2009) .......................................................................43

*United States v. Scott*,

   426 F.3d 1324 (11th Cir. 2005)...........................................................................38

*United States v. Siegel*,

   102 F.3d 477 (11th Cir. 1996)............................................................................31

*United States v. Talley*,

   431 F. 3d 784 (11th Cir. 2005)...........................................................................38

## Statutes & Other Authorities:                                             Page:

18 U.S.C. § 2251 ................................................................................ 1, *passim*

18 U.S.C. § 2252 ....................................................................................1, 13

18 U.S.C. § 2422 ................................................................................ 2, *passim*

18 U.S.C. § 3231 ....................................................................................... viii

18 U.S.C. § 3553 ..................................................................................... 24, 37

18 U.S.C. § 3742 ....................................................................................... viii

28 U.S.C. § 1291 ....................................................................................... viii

## Table of Citations (Continued)

**Statutes & Other Authorities:**                    **Page:**

28 U.S.C. § 2254 .................................................................32

Fed. R. App. P. 4 ............................................................. viii

Fed. R. App. P. 26.1 .......................................................C-1

Fed. R. App. P. 32 .............................................................46

Fed. R. Crim. P. 11.......................................................27, 29

Fla. Stat. § 394.910 ...........................................................34

**United States Sentencing Guidelines:**                    **Page:**

§ 2G2.2 ............................................................... 11, *passim*

§ 3D1.3 ...............................................................................11

§ 3E1.1 ...............................................................................12

§ 4B1.5 ...............................................................................12

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Michael Edwin Harding on May 31, 2016 (DE114). The district court had jurisdiction to enter the judgment pursuant to 18 U.S.C. § 3231. Harding filed a timely notice of appeal on June 14, 2016 (DE117); *see* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and authority to examine Harding's challenge to his conviction and his sentence pursuant to 18 U.S.C. § 3742(a).

## Statement of the Issues

1.  Whether Harding's guilty plea was knowing and voluntary where the district court informed Harding of the consequences of his guilty plea.

2.  Whether Harding's life sentence for attempting to entice a minor to engage in sexually explicit activity, in violation of 18 U.S.C. §§ 2251(a) and (e), was substantively reasonable.

## Statement of the Case

## 1.    <u>Course of Proceedings and Disposition in the Court Below</u>

On November 12, 2015, a federal grand jury in the Southern District of Florida returned a six-count second superseding indictment charging appellant Michael Edwin Harding ("Harding"), a Port St. Lucie, Florida, police officer, with distribution on or about July 23, 2015, of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Count 1); distribution on or about July 26, 2015, of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Count 2); distribution on or about August 4, 2015, of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Count 3); possession of two thumb drives and a cellular telephone containing visual depictions of a prepubescent minor and a minor under the age of 12 engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2)

(Count 4); beginning on or about August 12, 2015, attempting to persuade, induce, entice, and coerce an individual under the age of 18 to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 5); and production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count 6) (DE16).

On February 22, 2016, Harding pled guilty to Counts 1 through 4, and entered a nolo contendere plea to Counts 5 and 6 (DE76). On May 31, 2016, the district court sentenced Harding to life imprisonment, the sentence consisting of 240 months' imprisonment for Counts 1 through 4, life imprisonment for Count 5, and 360 months' imprisonment for Count 6, all to be served concurrently (DE114). The court also imposed a lifetime supervised release term for all counts, to be served concurrently, and a special assessment of $600 (*id.*). Harding filed a timely notice of appeal and remains incarcerated (DE117).

## 2. Statement of the Facts

At the change of plea hearing, Harding agreed to the following facts with respect to Counts 1 through 3:

> The factual basis for Count 1. The Defendant, Michael Harding, on July 23, 2015, at approximately 9:11 a.m., using the screen name "desthfromabovee", D-E-S-T-H-E-F-R-O-M-A-B-O-V-E-E, posted two images of child pornography in the Kik Messenger chat room titled #toddlerfuck, T-O-D-D-L-E-R-F-U-C-K. One of the images posted to the chat room depicts a preteen female, under the age of 18, performing oral sex on an adult male. The other image posted to the chat room

depicts a preteen girl, under the age of 18, reclining on a couch exposing her vagina to the camera.

Both images were downloaded from the internet by a federal agent located in Wilmington, Delaware. The images were posted while Michael Harding was in the Southern District of Florida. The images were posted over the internet.

(DE128:28-29).

The factual basis for Count 2. The Defendant, Michael Harding, on July 26, 2015, at approximately 6:21 a.m., using the screen name "desthfromabovee," posted one video of child pornography in the Kik Messenger chat room titled #toddlerfuck. The file uploaded to the chat room over the internet depicts a prepubescent female being anally penetrated by an adult male penis as he ejaculates.

The image was posted while Michael Harding was in the Southern District of Florida, and as was the case in Count 1, an image downloaded by a Federal agent who was in Delaware.

Factual basis for Count 3. The Defendant, Michael Harding, on August 4, 2015, at approximately 6:49 a.m., using the screen name "desthfromabovee," posted one video of child pornography in the Kik Messenger chat room titled #toddlerfuck. The file uploaded to the chat room over the internet is 37 seconds long and shows an adult male rubbing his penis on the vagina and anus of a preschool aged female. The girl in the video is prepubescent and under 12 years of age.

The image was posted while Michael Harding was in the Southern District of Florida. The image was downloaded from the internet by an undercover agent in Delaware.

(DE128:29-30).

Harding also agreed that the following facts proved that he was guilty

of Count 4:

The factual basis:   the Defendant, Michael Harding, on September 22, 2015, did knowingly possess matters in and affecting interstate and foreign commerce containing visual depictions that involved the use of a minor engaged in sexually explicit conduct.

On September 22, 2015, a search warrant was executed at the residence of Michael Harding located in Port St. Lucie, Florida, in the Southern District of Florida.   A PNY thumb drive was located in a gun case within a closet inside the bedroom of Michael Harding's home.   The PNY thumb drive contained 606 still images and 102 videos depicting minor children, including prepubescent children, engaging in sexually explicit conduct.   Some of the images also depict[ed] sadomasochistic conduct.

One or more of the images discovered on the PNY thumb drive were produced outside the State of Florida and were subsequently distributed over the internet before the Defendant possessed them.

An LG-D800 cellular telephone registered to Michael Harding was discovered in a nightstand next to his bed in the bedroom.   It was manufactured in Korea and was shipped and transported in interstate and foreign commerce prior to September 22, 2015.

A forensic examination of the LG-D800 cellular telephone revealed the presence of nine videos involving the use of minors engaged in sexually explicit conduct, including images uploaded to the Kik Messenger chat room "#toddlerfuck" by user "desthfromabovee" on July 26, 2015 and August 4, 2015.

Harding did not contest the accuracy of the following facts with regard to

Count 5:

Michael Harding, between August 12, 2015 and September 10, 2015, engaged in chat conversations with a single individual having the Kik Messenger screen name "daddydearaimee" and the Skype screen name "Mel M."

4

The text conversations occurred on the Kik Messenger application, and the Skype application, on Michael Harding's LG-D800 cell phone and Samsung cell phone. The person with whom Michael Harding was having the conversation, hereinafter referred to as "daddydearaimee," told Michael Harding that he had a seven year old daughter and a 12 year old daughter. "Daddydearaimee" sent Michael Harding non-nude pictures of two girls he stated were his minor children. The two girls shown in the images are clearly minor females.

"Daddydearaimee" claimed he had performed sex acts on both of his own minor children. Michael Harding stated that he had previously engaged in sexual acts with his nine year old stepdaughter.

Michael Harding initiated a conversation about exchanging their minor children for the purpose of engaging in sexual acts. Michael Harding graphically described the sex acts he had performed on his stepdaughter Michael Harding sent "daddydearaimee" non-nude images of both of his stepdaughters showing their bodies, without showing their faces. One of the images showed the face of Michael Harding's nine year old stepdaughter, the one that Michael Harding proposed swapping for sex.

Michael Harding provided real biographical information about himself, including his age, residence and the composition of his family. He had detailed conversations with "daddydearaimee" regarding where they would meet and how Michael Harding would explain to his wife he was traveling alone with his nine year old stepdaughter.

In carrying on these conversations, Michael Harding did attempt to entice the minor child of "daddydearaimee" to engage in sexual acts that would constitute a violation of Florida law.

(DE128:39-40).

Harding also did not contest the accuracy of the following facts with regard to Count 6:

5

On September 22, 2015, a search warrant was executed at the residence of Michael Harding located in Port St. Lucie, Florida, in the Southern District of Florida.   An LG-D800 cellular telephone owned by Michael Harding was discovered in a nightstand next to his bed in his bedroom. The phone contained images of Michael Harding and the personal bank account information of Mr. Harding.

The cell phone number matched the number Michael Harding had on file at the Port St. Lucie Police Department as his personal number. The LG-D800 phone was manufactured in Korea and was shipped and transported in interstate and foreign commerce prior to September 22, 2014.

A forensic examination of the LG-D800 cellular telephone revealed the presence of thumbnail, (imgcache, I-M-G-H-C-H-E, .0 underline embedded underline 1092.jpg.)

I should put on the record because the image was produced on November 17, 2014, that the LG-D800 cell phone had been manufactured in Korea and shipped in foreign commerce prior to November 17, 2014.

A forensic examination showed that there was a deleted video named – or titled rather, 20141117 underline 165134.mp4.   This image was originally located in the following path:   \0\DCMI\Camera20141117, underline 1650134.mp4.

The naming convention is consistent with other images and videos produced by the phone in the "camera" folder.   When a video is recorded by the phone, a thumbnail image is automatically created by the phone with an image from a frame of the video.   Because the video and thumbnail image are stored in the separate areas of the phone, it is possible to delete the video without deleting the thumbnail image.

The image depicts Michael Harding's eight year old stepdaughter performing oral sex on him.   Chat messages recovered from the LG-D800 phone contain references to the image found on the phone.

6

> Michael Harding, in Kik and Skype chat messages contained within the LG-D800 cell phone, describes how his then eight year old stepdaughter performed oral sex on him, how he videotaped the sex act, and then how he deleted the video because he was afraid of getting caught. The biological mother of Michael Harding's step daughter is able to identify her daughter in the thumbnail image.

(DE128:46-47).

Before the facts were recited by the government, the court asked Harding a series of questions designed to determine whether Harding understood the nature of the proceeding and the rights that he would waive as the result of his guilty and nolo contendere pleas (DE128:3-25). First, the court asked Harding to state his name and his age and whether he had taken any medication or had ever been treated for any mental illnesses (DE128:3-5). Harding properly stated his name, that he was 28 years old, and that he had been treated for depression and anxiety seven or eight years ago and prescribed medication for the condition. He agreed that he was competent to enter the plea (DE128:6).

Upon questioning, Harding told the court that he had read the second superseding indictment and had discussed it with counsel and was fully satisfied with the representation he had received (DE128:6-7). He admitted that he had not been threatened or forced to enter a plea nor had anyone made any promises or assurances to him to influence him to enter a plea (DE128:7-8). The court read the indictment to him and asked him whether he understood that he would be adjudged

guilty of the charges if his plea was accepted by the court and Harding acknowledged that he understood (DE128:10-11).   The court also informed Harding that the adjudication of guilt would "deprive [him] of valuable civil rights, the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of firearm" and would have immigration consequences if he was not born in the United States (*id.*).

The court described the statutory penalties for each of the offenses including the fact that the statutory maximum sentence for his Count 5 violation of 18 U.S.C. § 2422(v) was life imprisonment, a $250,000 fine, supervised release of five years to life, a $100 special assessment, and a $5,000 special assessment, unless he was indigent (DE128:11-14).   The court also explained in detail that the sentences could be imposed to be served concurrently or consecutively (DE128:14-17). The court also explained the statutory mandatory minimum sentences for each of the offenses (DE128:15-16). Harding acknowledged that he understood the possible sentences and did not need additional time to discuss the sentences with his attorney (*id.*).   The court also discussed restitution and forfeiture and Harding again acknowledged that he understood (DE128:17-19).   The court also questioned Harding regarding whether he had discussed the Sentencing Guidelines with counsel and how they might apply to his case (DE128:20-21).   Harding confirmed that he had (*id.*).

8

At the court's questioning, Harding further confirmed that he understood that he had the right to persist in his not guilty plea and proceed to a jury trial, to be represented by counsel, to confront the witnesses against him, and the right to testify at trial (DE128:23-25).

Prior to explaining the elements of the offenses and the factual basis for the offenses, the government reminded the court that it should make clear to Harding that his conviction would result in restrictions on where he could live and work and on whom he could associate with:

The government:  Before we move on to that, one last thing with regard to notice of the Defendant, that he understands conviction for this offense will result in substantial restrictions where he may live, work and associate.

The court:  Okay.

The court: Do you understand that, Mr. Harding.

Harding:  Yes.

The court:  Do you have any questions about that?

Harding: No.

The court:  Do you need additional time to confer with your attorney about that?

Harding:  No, Your Honor.

(DE128:25).

9

The government then described each count of the second superseding indictment in detail and the facts supporting each count (DE128:25-45). Harding agreed that the government's factual proffer was true and accurate, that the facts were sufficient to establish each offense, and agreed that he was guilty of Counts 1 through 4 (DE128:25-36). With respect to Count 5, after the government presented the factual proffer, Harding declined to affirmatively admit the facts but stated that he did not contest the proffered facts (DE128:42-43). He admitted, however, that, if proven, the facts would constitute the charged crime of attempt to coerce or entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (*id.*). Finally, with respect to Count 6, Harding again stated that he did not contest the proffered facts and agreed that the proffered facts would constitute the charged crime of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (DE128:48-50).

After discussing all of the counts and determining that Harding had understood the charges and agreed that the proffered facts were sufficient to establish the charged crimes, the court asked both the government and Harding whether any further matters needed to be discussed or reviewed before Harding entered his plea (DE128:50-51). Both agreed that no further discussion was necessary and defense counsel agreed that the court had "covered everything" (*id.*). Harding then entered

a guilty plea to Counts 1 through 4 and a nolo contendere plea to Counts 5 and 6 (DE128:51-53).   After Harding entered the plea, the defense counsel at the court's questioning again confirmed that Harding had understood the consequences of his plea (DE128:52-53).

The court then confirmed that Harding was "alert and intelligent, fully competent and capable of entering an informed plea in this case; that he is aware of the nature of the charges and the consequences of the plea" (DE128:56).   The court accepted Harding's plea as "voluntarily and intelligently entered" (*id.*).   At the conclusion of the hearing, the court again asked whether the defense believed that "anything further" needed to be addressed and the defense stated "no" (DE128:57-58).

### The Pre-Sentence Investigation Report

The United States Probation Officer prepared a Pre-Sentencing Investigation Report (the "PSI") setting Harding's base offense level at 22, pursuant to USSG § 2G2.2 and § 3D1.3 (PSI ¶ 26).   Two levels were added to the base offense level, pursuant to USSG § 2G2.2(b)(2) because the offense involved a prepubescent minor or a minor under the age of 12 (PSI ¶ 28); two levels were added, pursuant to USSG § 2G2.2(b)(3)(F), because the offense involved distribution (PSI ¶ 29); four levels were added, pursuant to USSG § 2G2.2(b)(4), because the offense involved material

that portrayed sadistic or masochistic conduct or other depictions of violence (PSI ¶ 30); five levels were added, pursuant to USSG § 2G2.2(b)(5), because Harding had engaged in a pattern of activity involving the sexual abuse or exploitation of a minor (PSI ¶ 31); two levels were added, pursuant to USSG § 2G2.2(b)(6), because the offense involved the use of a computer for the possession and distribution of the material (PSI ¶ 32); and five levels were added, pursuant to USSG § 2G2.2(b)(7)(D), because the offense involved 600 or more images (PSI ¶ 33).

Additionally, because the offense was a covered sex crime, and Harding had engaged in a pattern of activity involving prohibited sexual conduct, his offense level was raised to 47, pursuant to USSG § 4B1.5(b)(1) (PSI ¶ 38). After receiving a three-level downward adjustment for his timely acceptance of responsibility under USSG § 3E1.1(a) and (b), Harding's total offense level was 43 (PSI ¶ 41).

The PSI pointed out that Harding had pending Florida charges for sexual battery on a child arising from the same facts as the present offense (PSI ¶ 46). Harding had been a Fort Pierce, Florida, police officer from 2008 to 2012, and a Port St. Lucie, Florida, police officer from 2012 to the date of his arrest in this case (PSI ¶¶ 63-64). He had no criminal history and, as a result, he had a criminal history of category of I (PSI ¶ 46).

12

Based upon his total offense level of 43 and his criminal history category of I, Harding's guideline range of imprisonment was life (PSI ¶ 75).   As to Counts 1 through 3, his minimum statutory range of imprisonment was 5 years and the maximum was 20, pursuant to 18 U.S.C. § 2252(b)(1); as to Count 4, the maximum term was 20 years, pursuant to 18 U.S.C. § 2252(b)(2); as to Count 5, the minimum term was ten years and the maximum was life, pursuant to 18 U.S.C. § 2422(b); and, as to Count 6, the minimum term was 15 years and the maximum was 30 years, pursuant to 18 U.S.C. § 2251(e) (PSI ¶ 74).

After receiving objections from the government and from Harding, the Probation Office prepared a PSI Addendum.   The Addendum noted that the government had found a thumb drive in Harding's gun case in his bedroom during the execution of a search warrant that contained child pornography saved as early as March 6, 2008 (PSI Addendum). Additionally, Harding's victim/step-daughter C.W.'s DNA was on a sex toy found with the thumb drive in the gun case (id.).   The government had further revealed that Harding had attempted to conceal his identity to prevent detection of his criminal behavior by using pseudonyms for his Kik and Skype accounts and a browser that blocked websites from learning the user's physical location (*id.*).   The investigation had also revealed that Harding had distributed child pornography while on duty as a law enforcement officer (*id.*).

The Addendum noted that, although the PSI had summarized some of Harding's texts and internet chats, the government would file a sealed exhibit containing complete copies of Harding's internet chat messages in which he had communicated with others about child pornography, discussed his sexual activities with his step-daughter, and encouraged others to engage in sex with children (*id.*). Finally, the government explained that it had located 94 previously identified child pornography series in the images seized from Harding and that the images depicted 94 different minors and were produced in 20 different countries (*id.*).

With respect to Harding's objections, the PSI Addendum noted that Harding had objected to paragraphs 12 through 20 of the PSI which had summarized Harding's chats and text messages and both of Harding's step-daughters' statements about his sexual abuse (PSI Addendum). Harding denied that he had engaged in sexual contact or conduct with a minor. In response, the Probation Office explained that the step-daughters had described the abuse in detail during interviews with law enforcement and the evidence of Harding's internet chat conversations and text messages and a video of his eight-year-old step-daughter C.W. performing oral sex on him had been found on his cellular telephone (*id.*).

Harding also objected to paragraph 31 of the PSI which provided a five-level increase, pursuant to USSG § 2G2.2(b)(5), for engaging in a pattern of activity

involving sexual abuse or exploitation of a minor (PSI Addendum). The Probation Office explained that the enhancement was warranted because there was sufficient evidence to prove that he had committed the conduct charged in Counts 5 and 6 of the indictment (*id.*).

### The Sentencing Hearing

At the outset of the sentencing hearing, the district court explained that it had received and reviewed a series of pleadings filed prior to sentencing by the parties: the government's objections to the PSI (DE84), Harding's objections to the PSI (DE86), Harding's notice of filing letters of consideration (DE88), Harding's notice of filing under seal a psychological examination of him by psychologist Dr. Brannon, the government's sentencing memorandum (DE96), Harding's motion for a downward variance (DE92), and the government's sealed exhibit of Harding's internet chats and text messages (DE91) (DE129:5-6).

Contrary his objections to the PSI's recitation of facts, at sentencing, Harding admitted at the sentencing hearing that there were no factual objections to be resolved (DE129:8). Both the government and the defense agreed with the court that the PSI had correctly computed Harding's total offense level at 43 and his criminal history category, and further agreed that his guideline range of imprisonment was life imprisonment (*id.*).

Both the United States and the defense presented witnesses at sentencing and presented arguments regarding the appropriate sentence to be imposed. First, the government presented the testimony of Detective Sheila La Grega, a 16-year veteran criminal investigator for the Port St. Lucie Police Department trained in interviewing child witnesses and victims, who had interviewed Harding's wife Ashley and her two daughters (DE129:12-14). During the course of several interviews, C.W. described a number of encounters where Harding had taken off his clothes, directed her to take her clothes off and lay next to him or sit next to him and touch his penis, and Harding had touched her on her breast and butt and told her put her mouth on his penis (DE129:16-27). C.W. used a doll to demonstrate to Det. La Grega that Harding had digitally penetrated her vaginally and anally (DE129:27-28). C.W. also told Det. La Grega that Harding had put his penis in her "privates" and that it was painful (*id.*).

H.W. described three separate incidents by drawing pictures (DE129:31). She explained to Det. La Grega that she had been in a tent in the backyard alone with Harding where he had taken her clothes off and ordered her to lay down on the sleeping bag and touched her body. According to H.W., Harding inserted the handle of a screwdriver and a knife into her vagina and her butt and tapped her chest with a hammer telling her that he needed to check her heart (*id.*). He had also taken

16

pictures of her naked that he told her that he would show to her mother (*id.*).    H.W.'s and C.W.'s drawings and writings about the incidents with Harding were made part of the record at sentencing as sealed exhibits (DE129:29-30; Exhibits 2 -6).

The government also introduced evidence found in Harding's possession through Agent Brian Ray, an investigator from the Department of Homeland Security who had examined the thumb drives and Harding's telephone (DE129:51-53).    Agent Ray found still images and videos containing child pornography and chat messages in which Harding had discussed with others the exploitation of children including his sexual abuse of C.W. (DE129:53-59).    Agent Ray found more than 70 separate conversations in Harding's cellular telephone regarding the sexual exploitation of children during the time period from March 25 through September 22, 2015, the day that Harding was arrested, and recovered images from Harding's thumb drive that had been downloaded as early as March 6, 2008 (DE129:60-66).    A video of his sexual exploitation of C.W. that he had erased from his cellular telephone was recovered and showed that it had been created on November 17, 2014 at 4:51 p.m. (DE129:66-67, Govt. Exh. 9).

The defense presented the testimony of psychologist Dr. Michael Brannon who had evaluated Harding in December 2015 to assess Harding's mental state (DE130:7-10).    Dr. Brannon noted that Harding had previously been diagnosed

with anxiety disorder, panic disorder, and substance abuse of various drugs including anti-depressants and anti-anxiety medications including Zoloft and Klonopin (DE130:11).    After evaluating Harding, Dr. Brannon concluded that he had persistent depressive disorder, anxiety disorder, and that he used alcohol and cannabis, and was abusing prescription opioids "for a short time in 2015" (DE130:15-21).   Harding also told him that at the time of his arrest, he was no longer using the opioids and other medication but was still using alcohol and marijuana (*id.*).

Dr. Brannon testified that Harding had told him that he had been sexually abused as a child by two individuals and that his mother had been an active alcoholic and drug addict during his childhood (*id.*).   Dr. Brannon also testified that, based upon research, sex offenders usually engage in sexually violent or abusive behavior between the ages of 18 to 30 but by age 55 the probability that the offender would engage in this behavior was lower and continued to descend (*id.*).

On cross-examination, Dr. Brannon admitted that he had not seen any of Harding's internet chat or text messages or the child pornography that Harding had viewed or produced (DE130:21-25).   Dr. Brannon also admitted that the fact that Harding had offered his stepchild in exchange to have sex with the child of another person would be an indicator of a greater probability that Harding would reoffend in

the future (*id.*).   He concluded that any contact with another individual concerning child pornography would be an indicator of increased future risk (*id.*).

Dr. Brannon agreed that there was no indication that Harding did not have the capacity to understand the criminal nature of his behavior (DE130:29).   He further agreed that every victim of child sexual abuse does not necessarily commit child sexual abuse when they are older, nor does a person who has depression or anxiety disorder necessarily commit these offenses, but that the combination of these factors would increase the probability (DE130:29-30).

Harding's wife, Ashley, also testified explaining that she and Harding had begun living together in 2011 and married in May 2014 (DE130:57-61).   Her daughters C.W. and H.W., from her prior marriage lived with them, and on March 11, 2015, she and Harding gave birth to a third daughter (*id.*).   Ashley testified that she worked as a receptionist and Harding, who worked the midnight shift as a police officer, would pick up C.W. after school.   She would pick up H.W. after she left work.   After the third child was born in March 2015, Ashley no longer worked outside of the home and noticed that Harding had become "more distant" (*id.*).   She knew that Harding took Klonopin and hydrocodone but believed that the took the medication "as prescribed" and did not believe that Harding was abusing alcohol (DE130:63-65).

19

She testified that when she became pregnant, Harding had bought a tent to use in the backyard with the children and told her that he thought it was a good idea to have "one-on-one time with the girls so they don't feel left out" (DE130:65-68). She recalled several occasions on which Harding would spend the night in the tent with C.W. and H.W., and that H.W. would usually return to the house around midnight stating that she was "afraid" (DE130:65-66).   She also recalled that Harding would not allow her to touch his cellular telephone (*id.*).

After Harding's arrest, C.W. began to tell Ashley some of what she had experienced with Harding and Ashley contacted the police who arranged for Detective La Grega to interview the children (DE130:73-79).   Both H.W. and C.W. related incidents to Ashley in which Harding had touched them, had required them to touch his penis and had placed objects in their vagina and anus (*id.*).   In moving from the family home to her parents' home, Ashley and her mother also found Harding's gun case which contained the pink butt plug that was later found to have C.W.'s DNA on it (DE130:81, 101).   They also found a screwdriver which H.W. had said Harding had inserted into her (DE130:80-83.).   Ashley further viewed Exhibit 9, the image of C.W. and Harding in which C.W. was performing oral sex on Harding and confirmed that the child in the image was her daughter, C.W. and the penis was Harding's (DE130:82-83).

Ashley also told the court that she believed that Harding should receive a life sentence because of the psychological damage he had done to C.W. and H.W., and because he had used his position as a police officer to gain her trust and the trust of her children only to abuse and exploit her children (DE130:84-86). She noted that he had targeted her as a single mother in order to use the children and further stated that he had stolen C.W.'s and H.W.'s childhood and their innocence and that they would be affected by Harding's actions for the rest of their lives.   They had also lost their home and the children would grow up without a father (*id.*).

Harding's mother and great aunt also testified on his behalf (DE130:117-20). Harding's mother admitted that she had struggled with addiction while Harding was growing up, but did not know that he had been sexually assaulted as a child until she learned that from Harding's former girlfriend.   She claimed that she was unaware that he abused prescription drugs, marijuana, or alcohol.   Harding's aunt testified that Harding was "a wonderful person" and that his present conduct was an aberration (DE130:119-20).

During the sentencing hearing, Harding's attorney advocated for a sentence of 360 months, rather than life imprisonment, arguing that the Sentencing Commission had acknowledged that the sentencing enhancements under USSG § 2G2.2 are excessive, and that mitigating circumstances such as the fact that

Harding was raised by a single parent who had addiction problems, and had dropped out of high school, yet had obtained his GED and graduated from police academy and gave back to the community as a police officer warranted a lesser sentence (DE130:121-23).   The defense further pointed to Dr. Brannon's general testimony that the risk of a sex offender re-offending generally decreased after age 55 to support the contention that Harding should not receive life imprisonment (*id.*).   The defense also pointed out that there were pending state charges against Harding and that, if Harding received life imprisonment in the federal case, "there will be no reason to make any kind of concession once he gets to State Court" and Harding would pursue a trial in the state case during which "C.W. and H. W. will have to testify probably more than once" (DE130:124-25).

The court pointed out that the Sentencing Commission's 2012 report regarding excessive punishment had referred to the viewing or distribution of child pornography, but had not included other aspects of this case such as enticement, and production of child pornography (DE130:137-38).

Harding personally addressed the court stating that he regretted viewing and possession child pornography and felt "guilt, shame, regret and remorse" because of his behavior (DE130:126-27).   He further acknowledged that the "situation" had caused "untold amounts of pain and grief to [his family] and to his friends and the

community (*id.*).   He also told the court about sexual abuse that he had suffered as a child (*id.*).   He asked that the court impose a sentence less than life imprisonment (*id.*).

The government advocated for life imprisonment (DE130:128-38).   The government pointed out that in addition to viewing and distributing child pornography that contained disturbing and violent images of children being sexually abused by adults, Harding had abused his step-daughters for four years (*id.*).   The government pointed out the callousness with which Harding had discussed in an internet chat how to break the hymen of a nine-year-old girl in order to have intercourse with her and had viewed videos of children tied up and forced to engage in painful sexual abuse (*id.*).   The government further pointed out the powerlessness of the victims, including the child victims in this case, and noted that Harding had made plans to take C.W. on a trip in order to exchange her for sex with another child (*id.*).

The government further maintained that Harding had employed sophisticated and calculating methods to cover up his activities and that he only regretted the fact that he had been caught.   He had caused harm to the children in the videos by distributing the images to others.   In his internet chats, he had encouraged others to offend and suggested to an individual that he should also find a single mother so that

he could have a child to "train" (*id.*).   Harding had claimed in the internet chat that he had begun to train a child at age five and that it "had worked" for him (*id.*).

The government further maintained that the court should not consider the state case in determining the sentence to impose here because there was no logical reason that the punishment in the cases should have a corresponding consequence (*id.*). The government discussed Dr. Brannon's statements regarding the factors that heighten the risk of reoffending and pointed out that Harding had demonstrated those factors (*id.*).

After hearing from both parties, the court reviewed the statutory sentencing factors found in 18 U.S.C. § 3553(a), and discussed in detail the evidence and the testimony presented (DE130:140-70).   The court held that a variance below the guideline sentence was not warranted and imposed a sentence of life imprisonment (*id.*).   First, the court summarized the evidence noting that it had reviewed Exhibits 1 through 15, as well as all of the documents and pleadings filed by both parties, had considered the testimony of the witnesses including Detective La Grega, Dr. Brannon and the evidence regarding Harding's childhood abuse, emotional and psychological problems and apparent addictions, and the fact that Harding had repeatedly abused his step-daughters for a period of years (*id.*).

24

The court also discussed the Sentencing Commission's report regarding the child pornography guidelines noting that the Commission's concern emphasized possession and distribution charges and not enticement or child pornography production offenses (DE130:157-58).   The court further noted that it had taken the Sentencing Commission's concerns into consideration in determining the appropriate sentence (*id.*).   The court noted that "when child pornography is produced in conjunction with the sexual abuse of children, as it was, the harm to the child is magnified and perpetuated" (DE130:160-61).   The court considered on the record the nature and the circumstances of the offense noting that Harding had repeatedly sexually abused two young children in his care and attempted to provide one of the children to a pedophile in exchange for gaining access to more children that he could abuse (*id.*).   The court considered on the record the fact that the sentence must provide just punishment stating that "the sentence must not only signal to Mr. Harding, but to others, that these types of offenses are simply not tolerated, and that there are laws that must be abided by and consequences if those laws are violated" and that Harding, as a police officer, would understand that (*id.*). The court referred to the gravity of Harding's conduct, noting that the sentence must adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing reoccurrence of the offense" (DE130:159-60).

The court further noted that when child pornography is produced, in conjunction with the sexual abuse, the harm to the child is "magnified and perpetuated" (*id.*). The court also read a letter from a mother whose child had been similarly victimized that had been made a part of the government's sentencing memorandum (DE130:161-63).

After discussing the sentencing factors in the context of the facts of this case the court concluded as follows:

> And based on all of the factors and the case law and the argument and the evidence and the briefing and the testimony, the Court reaches the conclusion that it is the judgment of this Court that you, Mr. Michael Edwin Harding, are committed to the Bureau of Prisons to be imprisoned for life.
>
> The term consists of 240 months as to Counts 1 through 4, life as to Count 5, and 360 months as to Count 6, all to be served concurrently.

(DE130:164).

After imposing sentence, the defense preserved its argument regarding the request for a downward variance and argued that the sentence was "substantively unreasonable under the circumstances" (DE130:169).

### 3.   **Standards of Review**

Having raised the argument for the first time on appeal that the district court violated Fed. R. Cr. P. 11 during the plea colloquy by failing to inform him of mandatory sex offender registration laws and Florida laws regarding indefinite confinement, Harding's new argument is reviewed for plain error only. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). This Court has held that in order to vacate the defendant's guilty plea, "a silent defendant" must demonstrate plain error, namely, "a reasonable probability that, but for the Rule 11 error, he would not have entered the guilty plea." *Dominguez Benitez*, 542 U.S. at 83. Plain errors are those seriously affecting the substantial rights of defendants and the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 735-36 (1993).   Plain error analysis is permissive, not mandatory, and should be applied only in exceptional circumstances to prevent a miscarriage of justice. *Id.; United States v. Hernandez,* 896 F.2d 513, 523 (11th Cir. 1990); *United States v. Pielago,* 135 F.3d 703, 708 (11th Cir. 1998).   In plain error analysis, the defendant bears the burden of persuasion with respect to prejudice. *Dominguez Benitez*, 542 U.S. at 83.

The reasonableness of a sentence is reviewed for an abuse of discretion. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).

## Summary of the Argument

The district court did not plainly err during the plea colloquy by not specifically referencing sex offender registration requirements, restrictions on residence for convicted sex offenders, or the possible applicability of civil indefinite commitment laws as possible consequences of Harding's guilty plea. Harding did not establish that the court was required to warn him of these specific consequences and, based on the overwhelming uncontested evidence, Harding cannot establish that but for the court's omission, he would not have pled guilty.

Harding has not demonstrated that his life sentence was substantively unreasonable. The court carefully weighed the statutory sentencing factors on the record, considered the mitigating circumstances presented by the defense and considerations highlighted by the Sentencing Commission and found that, based upon the testimony presented at sentencing, the evidence gleaned from the Harding's thumb drives and cellular telephone, Harding's repeated sexual abuse of his step-daughters, and the other evidence presented, a life sentence was appropriate.

**Argument**

## I.  The District Court Did Not Plainly Err During the Fed. R. Crim. P. 11 Colloquy.

Harding contends that the District Court plainly erred by not informing him during the change of plea hearing of certain specific federal and Florida law consequences that he could face as the result of being a convicted sex offender (Br. at 16).  He argues that, prior to accepting his guilty plea, the district court should have informed him of mandatory sex offender registration requirements and residential restrictions for convicted sex offenders, and warned him of the possibility that he may be subject to indefinite civil commitment under federal or state law if he is deemed a violent or dangerous predator (*id.*).  He argues he should be given the opportunity to withdraw his plea (*id.*).

First, Harding has not established that the district court was obligated to warn him of these specific state and federal statutes that could carry collateral consequences.  Even if the court was required to do so, however, based on the overwhelming evidence of Harding's guilt on all of these offenses, Harding cannot demonstrate that but for the court's omission, he would not have entered a guilty plea.

Fed. R. Crim. P. 11 requires the district court to conduct an inquiry into whether the defendant has entered a knowing and voluntary guilty plea. Fed. R.

Crim. P. 11 (2015). Specifically, Rule 11(b) requires the court inform the defendant of the following: (1) the right to plead not guilty and persist in that plea;(2) the right to a jury trial; (3) the right to be represented by counsel; (4) the right at trial to confront and cross-examine adverse witnesses, to be protected from self-incrimination, and to compel the attendance of witnesses; (5) the fact that the guilty plea will waive all of the defendant's rights at trial; (6) the nature of each charge to which the defendant is pleading; (7) the maximum possible penalty, including imprisonment, fine, and term of supervised release; (8) any mandatory minimum penalties; (9) any applicable forfeiture; (10) the court's authority to grant restitution; (11) the court's obligation to impose a special assessment; (12) the court's obligation to calculate the advisory guideline range of imprisonment and to consider the statutory sentencing factors; (11) the terms of any plea agreement provisions waiving the right to appeal or collaterally attack the sentence; and (12) if the defendant is a not a citizen, the fact that he could be removed, denied admission to the United States or denied citizenship in the future (*id.*). The district court's careful and methodical plea colloquy clearly satisfied these requirements.

This Court has further explained and clarified these requirements by holding that the district court during the plea colloquy must address three core concerns underlying Rule 11: "(1) the guilty plea must be free from coercion; (2) the defendant

must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 950 (11th Cir. 2000) (quoting *United States v. Siegel*, 102 F.3d 477, 481 (11th Cir. 1996). This Court has explained that a defendant must be advised by the court of the "direct" consequences of his guilty plea. *Holmes v. United States,* 876 F.2d 1545, 1548 (11th Cir. 1989). Rule 11 does not require the court to advise a defendant of every possible collateral consequence of a guilty plea. *Hernandez-Fraire*, 208 F.3d at 951. The Court will generally uphold a plea colloquy that addresses these core concerns. *Id*.

The Supreme Court has explained that where the defendant does not raise the alleged Rule 11 error before the district court, as the defendant failed to do here, reversal is not in order unless the district court's Rule 11 error was plain. *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004). In the context of Rule 11 violations, in order to establish plain error, the defendant must show "a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 84. The Supreme Court further explained that the defendant "must satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* (internal citations omitted).

Harding's contention that the district court violated a core concern, the duty to inform him of the consequences of his guilty plea, rests upon the Supreme Court's ruling in *Padilla v. Kentucky*, 559 U.S. 356 (2010), a post-conviction habeas case brought by a defendant claiming ineffective assistance of counsel by an attorney who had failed to inform him that he could be deported as a the result of his conviction, and *Bauder v. Dept. of Corr. State of Fla.*, 619 F.3d 1272 (11th Cir. 2010), this Court's ruling in a post-conviction habeas corpus case brought pursuant to 28 U.S.C. § 2254(d)(1), by a defendant claiming ineffective assistance of counsel by an attorney who failed to inform him that he could face indefinite civil commitment after his conviction for aggravated stalking.  Neither of these cases supports Harding's argument that Rule 11 required the court to specifically refer to sex offender registration requirements, state or city ordinances restricting the residences of convicted sex offenders, and state or federal statutes regarding indefinite detention for certain violent sexual predators as consequences of his guilty plea.

First, *Padilla* involved a lawful permanent resident of the United States who had pled guilty to drug distribution charges and argued in post-conviction proceedings that his attorney rendered ineffective assistance by incorrectly informing him that he would not be deported as the result of his conviction, because he had lived in this country for a long period of time. *Padilla*, 559 U.S. at 356. The

Supreme Court ruled that counsel must inform a client whether his plea carries a risk of deportation because deportation was a such a serious consequence and had "a close connection" to the criminal process.   Id. at 367.   The Court noted that preserving a client's right to remain in the United States could be more important to the client than a potential jail sentence and the rules regarding deportation of individuals convicted of drug trafficking were clear.   *Id.*

The Court explicitly did not consider whether deportation was a direct or collateral consequence of the plea. *Id.* at 366. Instead the Court used principles of constitutional concern, describing deportation as a "penalty" intimately related to the criminal process.   *Id.*   The court held that deportation was the type of consequence on which competent and effective counsel should provide advice.   The Court, however, as in all habeas corpus cases, held that the petitioner must still establish that he was prejudiced by his counsel's advice before his conviction could be overturned.   *Id.*   It remanded the case to the district court to consider the issue of prejudice.   *Id.*

*Bauder* is also a post-conviction habeas claim by a defendant regarding affirmative mis-advice from his counsel. *Bauder*, 619 F.3d at 1273. Bauder argued that his aggravated stalking state conviction should be overturned because his attorney had incorrectly advised him that he would not be exposed to involuntary

civil commitment under Florida Statute § 394.910 if he were to plead guilty to aggravated stalking.   The petitioner's counsel had confirmed that had he known that his client would have been subject to the civil commitment proceedings, he would have advised him to go to trial. *Id.* at 1275.   This Court ruled that the attorney's affirmative mis-advice constituted deficient performance and that the mis-advice prejudiced the petitioner.   *Id.*

Neither *Padilla* or *Bauder* affirm that sex offender registration, residential restrictions, or possible civil confinement concerns are direct consequences of Harding's guilty plea which must be addressed as a core Rule 11 concern.   Both address the obligations of the defense counsel with regard to their clients.   Notably, there is no allegation in this case that Harding was unaware that his conviction could lead to these consequences.

Moreover, the court addressed the core concerns outlined in Rule 11, including informing Harding of the direct consequences of his guilty plea, including the fact that he faced a possible life sentence, a consequence more serious than any of these (DE128:11-25). Additionally, at the prosecutor's prompting, the court informed Harding that his conviction would result in substantial restrictions on where he could live, work, and whom he could associate with and Harding stated

that he understood, had no questions, and needed no additional time to discuss these restrictions with his counsel (DE128:25).

At any rate, the Court need not decide here whether the district court has an obligation to inform a defendant pleading guilty of a sex offense that he would be exposed to these specific consequences because, based upon this record, there is no reasonable probability that Harding would not have pled guilty and would have proceeded to trial in this case. The government presented overwhelming of evidence at sentencing of Harding's guilt of each of the offenses.   The evidence of Harding's offenses was contained in the numerous images, videos, and internet chat messages on thumb drives and on his cellular telephone.   Further evidence included the fact that C.W.'s DNA was found on the sex toy found in Harding's gun case, Harding's step-daughters who were interviewed by Detective La Grega confirmed the sexual abuse, and Ashley Harding testified regarding Harding's unwillingness to allow her to touch his telephone, the fact that he was often alone with her children, and that after Harding's arrest, her children had finally told her about their step-father's conduct.   The evidence confirmed that Harding had been in possession of child pornography at least since March 6, 2008, and had numerous images and videos containing child pornography on thumb drives and on his cellular telephone (DE129:53-59, 65-66).   He had made a video of his sexual exploitation of his step-

daughter on November 17, 2014, approximately one year before he was arrested and had chatted about it on the internet with other pedophiles and encouraged them to engage in the same illegal conduct (DE129:66-67; Exh. 9). Finally, Harding had suggested to "daddydearaimee," a pedophile he met in an internet chatroom, that they meet and have sex with each other's children and planned the details and had even provided "daddydearaimee" with biographical information about himself and sent pictures of his nine-year-old step-daughter to confirm that he was serious and intended to go forward with the plan (DE128:39-40).   Harding never contested the accuracy of the government's evidence (DE128:25-36, 42-43, 48-50).

Based upon the ample evidence against him, a reasonable defendant would not have gone to trial to avoid the collateral consequences that Harding now suggests.   In fact, logic would dictate that proceeding to trial and falsely denying the evidence would more likely increase the collateral consequences Harding might face.   As a police officer, Harding would certainly have known that a convicted sex offender would face mandatory sex offender registration laws, restrictions on residence, and the possibility of civil confinement and other possible consequences.

Notably, Harding has not asked to withdraw his guilty plea in his brief. Instead, he has asked "that he be given the opportunity to withdraw his plea" (Br. at 15, 20).   Withdrawing his plea would be of no benefit to him.

Based on the evidence in this case, Harding cannot "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine the confidence in the outcome of the proceeding" in this case.  *See Dominguez Benitez*, 542 U.S at 84 (internal quotations and citations omitted).   No plain error occurred during the plea colloquy and Harding's argument otherwise should be rejected.

## II.    Harding's Life Sentence Was Not Substantively Unreasonable.

Harding argues that his sentence was substantively unreasonable because the court improperly weighed the statutory sentencing factors in 18 U.S.C. § 3553(a) (Br. at 20).  He contends that the court gave too much weight to the advisory guidelines range and not enough to Harding's personal history and characteristics in arriving at the sentence.  The record shows that the court carefully weighed the statutory sentencing factors, the report and testimony of Dr. Brannon, the psychologist hired by the defense, as well as testimony and documents the defense had presented in Harding's support before concluding that a life sentence was appropriate.

The substantive reasonableness of a sentence is reviewed for abuse of discretion, based upon the totality of the circumstances.  *United States v. Livesay*, 525 F.3d 1081, 1091 (11th Cir. 2008).  In arriving at a reasonable  sentence, the

court must consider the statutory sentencing factors, including (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. *United States v. Talley*, 431 F. 3d 784, 786 (11th Cir. 2005) (*citing* 18 U.S.C. §3553(a)).

The district court need not "state on the record that it has explicitly considered each of the §3553(a) factors or … discuss each of them." *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005). It is sufficient for the district court to explicitly acknowledge that it considered the parties' arguments at sentencing which were based on the sentencing factors, and that it considered the factors. *Id.* Moreover, the weight given each of the statutory factors is "a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). The reasonableness of a sentence is reviewed under the abuse of discretion standard giving due deference to the sentencing court and reversal is

unwarranted unless this Court is left with the "firm conviction that the district court has committed a clear error of judgment in weighing the §3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). A district court commits a clear error of judgment when it weighs the statutory sentencing factors unreasonably, arriving at a sentence that does not achieve the purposes of sentencing in § 3553(a). *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010). In reviewing the sentence for reasonableness, the Court should consider "the totality of the facts and circumstances" reviewing each step that the district court took in its analysis. *Id.*

The district court's analysis here was clear and detailed. First, the court explained that it had reviewed all of the pleadings and documents that the parties had filed in aid of sentencing and had carefully reviewed all of the testimony (DE130:142). The court carefully summarized the evidence presented at sentencing, noting the testimony from Detective La Grega, Special Agent Brian Ray, Ashley Harding, Crime Lab specialist Wayne Walker, who had analyzed C.W.'s DNA found on a sex toy and Harding's semen found on the blanket in the images of C.W. and Harding, and testimony from Harding's mother and aunt (DE130:142-53). The court discussed Dr. Brannon's testimony and his conclusion that Harding's

reported childhood sexual abuse and his abuse of drugs and alcohol likely contributed to the offense (DE130:149-50). The court noted that Dr. Brannon's testimony about the likelihood of a sex offender re-offending was general in nature, and that psychologist had noted on cross-examination that some of the factors here – the fact that Harding was attracted to children under the age of five, bondage, and had a primary interest in prepubescent children and had acted on his interests - would increase the possibility that he would re-offend, even after the age of 55 (DE130:150-51).

The court then enumerated several statutory sentencing factors and applied them to the evidence in this case. The court discussed the nature and circumstances of the offense, noting that Harding had sexually abused C.W. multiple times, had offered to provide C.W. to a pedophile to be sexually abused for the purpose of gaining access to more children, the sexual abuse of his step-daughters had included sadistic acts which had caused pain to the small children, and that Harding had recorded the acts on his telephone (DE130:153-54). The court also discussed Harding's internet chats during which Harding had encouraged others to pursue relationships with single mothers in order to gain access to their children for sex, and Harding had discussed his sexual activities with C.W. in graphic detail (DE130:154-

55).   The court noted that the images that Harding had distributed were disturbing and sadistic images of children which served to perpetuate the abuse (*id.*).

Contrary to Harding's contention, in addition to discussing the nature of the offense, the court reviewed the evidence regarding Harding's history and characteristics gleaned from Harding's own testimony and from the testimony of his mother, his aunt, and Dr. Brannon (DE130:155-56).   The court also noted the fact that Harding was a law enforcement officer stating that his conduct "tarnished the perception of law enforcement in the community" (DE130:156).

The court then considered the fact that the sentence imposed must provide just punishment for the offense noting that the offenses here were on-going and grave and included not only the possession and distribution of child pornography but also the production of images of his sexual abuse of his step-daughter (DE130:160-61). The court considered the fact that the sentence should provide deterrence for others, promote respect for the law, and protect the public from further crimes especially since technology had provided newer ways for offenders to evade detection on the internet (*id.*).   The court further noted that it was only because Harding's activities on the internet were detected that prevented him from continuing the abuse of his step-daughters and perpetuating the abuse of other children by possessing and distributing child pornography (DE130:162-63).

41

On appeal, Harding argues that the district court "presumed the guidelines to be reasonable" and imposed the sentence "without evaluating whether the guidelines served their stated purpose or the factors enumerated in § 3553(a)" (Br. at 23).   The record here, however, reflects the court's reasoned analysis of the statutory sentencing factors and not a reflexive application of the guidelines as Harding contends.

Next, Harding's argues that the Sentencing Commission's 2012 report to Congress on the child pornography guideline section 2G2.2 established that the guideline "failed to achieve two of the three primary goals of the sentencing guidelines" because it (1) violates the provisions of § 3553(a) by failing to avoid unwarranted sentencing disparities, since courts "regularly vary downward from the guideline range," and (2), as a result, are inconsistent with pertinent policy statements issued by the Sentencing Commission which promote sentencing uniformity (Br. at 25-27).   He argues that the court should have taken the Commission's report into consideration in sentencing Harding (*id.*).

In discussing the Sentencing Commission's report during the sentencing hearing, the district court explained that the focus of the report was on non-production offense such as possession, receipt, and distribution of child pornography (DE130:156-57). The court further stated that it recognized that the report might be

applicable to Harding's non-production offenses, but not to Counts 4 through 6 of the indictment and, to the extent that the report was relevant, it had taken the Commission's concerns into account:

> This 2012 report may speak to certain of the counts that Mr. Harding is charged with. The Court does not construe the report as speaking to particularly Counts 4 through 6 of the indictment against Mr. Harding, but understands what you were trying to communicate to the Court and wants you to understand, on behalf of Mr. Harding, that the Court has taken that into consideration in its overall contemplation of the appropriate sentence.

(DE130:158).

The district court did consider the Sentencing Commission's report (*id.*).

Next, in addition to the fact that Harding's life sentence is within his advisory guideline range, it is not out of proportion with other cases in which children have been repeatedly sexually abused. This court has upheld life sentences, or sentences that would amount to life sentences, in cases in which defendants have engaged in repeated sexual abuse of minors: *United States v. Sarras*, 575 F.3d 1191, 1208, 1220-21) (11th Cir. 2009) (Court upheld as reasonable 1,200-month sentence for defendant's conviction for persuading his minor step-daughter to engage in sexually explicit conduct for purposes of producing photographs and for knowingly possessing child pornography); *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (Court upheld 140-year sentence for production, possession and

distribution of child pornography); *United States v. Kapordelis*, 569 F.3d 1291, 1318-19 (11th Cir. 2009) (Court upheld 420-month sentence imposed on medical doctor for producing and possession of child pornography); *United States v. Huskey*, 349 F. App'x 495 (11th Cir 2009)(Court upheld 840-month sentence for producing and distributing child pornography and sexually abusing is young daughter to produce videos to trade for additional child pornography image); *United States v. Foster*, 209 F. App'x 942 (11th Cir. 2006) (Court upheld life sentence for defendant who engaged in "numerous" sexual acts with his daughter, who was under the age of 12 when the offense began, and the abuse continued for a period of four years).

Finally, Harding's argument contains a footnote in which he appears to contends that, because he received an enhancement for engaging in "a pattern of activity" based upon the conduct charged in Counts 5 and 6, this factor was "arguably overrepresented" in his guideline computation (Br. at 27). Harding did not raise this argument before the district court and cites no authority to support his argument here. This Court should decline to review his belated and undeveloped claim. See *Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 223-24 (1997) (declining to decide questions that received only "scant argumentation"); *Marek v. Singletary*, 62 F.3d 1295, 1298, n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned").

Harding's sentence was not unreasonable in light of the uncontested evidence. Harding has not demonstrated that the district court abused its discretion in weighing the relevant statutory factors.   His sentence should be affirmed.

**Conclusion**

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

Wifredo A. Ferrer
United States Attorney


By:    s/Lisette M. Reid
       Lisette M. Reid
       Assistant United States Attorney
       99 N.E. 4th Street, #500
       Miami, FL 33132
       (305) 961-9129
       Lisette.Reid@usdoj.gov

Emily M. Smachetti
Chief, Appellate Division

Phillip DiRosa
Assistant United States Attorney

Of Counsel

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,308 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2010, 14-point Times New Roman.

**Certificate of Service**

I hereby certify that seven copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 17th day of January, 2017, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on Fletcher Peacock, Assistant Federal Public Defender, Attorney for Michael Edwin Harding.

s/ Lisette M. Reid
Lisette M. Reid
Assistant United States Attorney

*ab*